COLLOTON, Circuit Judge,
dissenting.
The Federal Crop Insurance Corporation (FCIC), acting pursuant to authority delegated to it by Congress in the Federal Crop Insurance Act (FCIA), 7 U.S.C. § 1506(p), has adopted a regulation stating that “[n]o State ... shall have the authority to promulgate rules or regulations, pass laws, or issue policies or decisions that directly or indirectly affect or govern agreements, contracts, or actions authorized by this part unless such authority is specifically authorized by this part or by the [FCIC].” 7 C.F.R. § 400.352(a) (emphasis added). Because I believe the opinion of the court does not recognize the preemptive force of this broad regulation, I respectfully dissent.
Federal regulations, like federal statutes, may preempt state law, if the regulations are intended to have preemptive effect, and the agency is acting within the scope of authority delegated to it by Congress. Capital Cities Cable, Inc. v. Crisp, 467 U.S. 691, 699, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984); Fid. Fed. Sav. & Loan Ass’n v. de la Cuesta, 458 U.S. 141, 153-54, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982). Neither the court nor the Commissioner disputes that the FCIC had the authority to promulgate § 400.352(a), or that preemption of the Commissioner’s market conduct examinations would be within the scope of the agency’s broad delegated authority, if the FCIC so intended. See 7 U.S.C. § 1506(k); Kansas ex rel. Todd v. United States, 995 F.2d 1505, 1510-11 (10th Cir.1993); Preemption of State Laws and Regulations, 55 Fed.Reg. 23,066, 23,067 (June 6, 1990) (The FCIC “has consistently interpreted 7 U.S.C. § 1506(k) to allow FCIC to preempt any state insurance rules or regulations regarding crop insurance that may apply to ... any insurance company with which FCIC has an agreement.”). Therefore, whether the regulation preempts the Commissioner’s authority to order market conduct examinations of Alliance, insofar as they concern Alliance’s participation in the federal crop insurance program, is a question of regulatory intent. Capital Cities Cable, 467 U.S. at 700, 104 S.Ct. 2694; Fid. Fed. Sav. & Loan Ass’n, 458 U.S. at 154, 102 S.Ct. 3014.
*554 The plain wording of the FCIC’s regulation necessarily contains the best evidence of the agency’s preemptive intent. The regulation at issue provides as follows:
(a) No State or local governmental'body or non-governmental body shall have the authority to promulgate rules or regulations, pass laws, or issue policies or decisions that directly or indirectly affect or govern agreements, contracts, or actions authorized by this part unless such authority is specifically authorized by this part or by the Corporation.
(b) The following is a non-inclusive list of examples of actions that State or local governmental entities or non-governmental entities are specifically prohibited from taking against the Corporation or any party that is acting pursuant to this part. Such entities may not:
(1) Impose or enforce liens, garnishments, or other similar actions against proceeds obtained, or payments issued in accordance with the Federal Crop Insurance Act, these regulations, or contracts or agreements entered into pursuant to these regulations;
(2) Tax premiums associated with policies issued hereunder;
(3) Exercise approval authority over policies issued;
(4) Levy fines, judgments, punitive damages, compensatory damages, or judgments for attorney fees or other costs against companies, employeés of companies including agents and loss adjustors, or federal employees arising out of actions or inactions on the part of such individuals and entities authorized or required under the Federal Crop Insurance Act, the regulations, any contract or agreement authorized by the Federal Crop Insurance Act or by regulations, or procedures issued by the Corporation {nothing herein is intended to preclude any action on the part of any authorized State regulatory body or any State court or any other authorized entity concerning any actions or inactions on the part of the agent, company or employee of any company whose action or inaction is not authorized or required under the Federal Crop Insurance Act, the regulations, any contract or agreement authorized by the Federal Crop Insurance Act or by regulations or procedures issued by the Corporation); or
(5)Assess any tax, fee, or amount for the funding or maintenance of any State or local insolvency pool or other similar fund.

The preceding list does not limit the scope or meaning of paragraph (a) of this section.

7 C.F.R. § 400.352 (2004) (emphasis- added).
Alliance argues that the market conduct examinations “directly or indirectly affect or govern agreements, contracts, or actions authorized by” FCIC regulations, and that they are thus preempted by § 400.352(a). The court appears to reject this contention on two grounds. First, the court says that “[t]o the extent the examinations do not impose any duty or obligation upon Alliance as crop insurers to process claims in a certain way, Alliance may comply with both state and federal law.” Ante, at 552. That Alliance may comply with both state and federal law, however, means only that the Commissioner’s regulatory order and examination is not preempted on the basis that it “conflicts” with federal law under one prong of “conflict preemption” analysis. See English v. Gen. Elec. Co., 496 U.S. 72, 79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990) (“state law is pre-empted to the extent that it actually conflicts with federal law,” such as “where it is impossible for a private party to comply with both state and federal requirements.”). This conclusion about con *555 flict preemption does not address whether the Commissioner’s authority is expressly preempted by § 400.352(a), even though an insurance company might be able to comply with both federal and state law. Of course, Congress not infrequently intends or authorizes preemption of state law that does not actually conflict with federal law in order to ensure uniform regulation or governance. E.g., Ray v. Atl. Richfield, 435 U.S. 151, 168, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978); Campbell v. Hussey, 368 U.S. 297, 300-01, 82 S.Ct. 327, 7 L.Ed.2d 299 (1961); Northern Natural Gas Co. v. Iowa Utils. Bd., 377 F.3d 817, 822-23 (8th Cir.2004); Gibson v. Am. Bankers Ins. Co., 289 F.3d 943, 948-49 (6th Cir.2002).
The court also appears to accept the Commissioner’s contention that the parenthetical proviso found in § 400.352(b)(4) modifies the preemptive force of § 400.352(a). Ante, at 552. Apparently applying a portion of the proviso rather than § 400.352(a), the court holds that the Commissioner’s authority to regulate Alliance is preempted only to the extent that any violation of Minnesota law committed by Alliance was “authorized or required by FCIA.” Ante, at 552. I disagree with this textual analysis.
The proviso of § 400.352(b)(4) — “nothing herein is intended to preclude any action on the part of any authorized State regulatory body or any State court or any other authorized entity concerning any actions or inactions on the part of the agent, company or employee of any company whose action or inaction is not authorized or required under the Federal Crop Insurance Act, the regulations, any contract or agreement authorized by the Federal Crop Insurance Act or by regulations or procedures issued by the Corporation” — modifies only the example of prohibited action listed in the body of § 400.352(b)(4). The placement of the proviso within a subsection of § 400.352(b) demonstrates that the term “herein” refers to the preceding example, not to the broad statement of preemption in the separate subsection of § 400.352(a). The independent force of § 400.352(a) is underscored by the last sentence of § 400.352(b), which makes clear that “[t]he preceding list does not limit the scope or meaning of paragraph (a) of this section.” In short, the proviso of § 400.352(b)(4) merely limits the scope of an example in a list which itself does not limit the scope of § 400.352(a). The proviso shows that the example in § 400.352(b)(4) does not preclude certain state regulatory action described in the proviso, but any such action is still subject to the overriding requirement of § 400.352(a) that it may not “directly or indirectly affect or govern agreements, contracts, or actions authorized” by FCIC regulations.[7]
I am left, therefore, with a question that neither the court nor the district court has *556 answered directly: whether the Commissioner’s market conduct examinations “directly or indirectly affect or govern agreements, contracts, or actions authorized” by FCIC regulations. The examinations concern the manner in which Alliance has handled claims made under federally-rein-sured crop insurance policies sold to sugar beet farmers in Minnesota. Every term of every such policy is mandated by the FCIC’s regulations. See 7 C.F.R. §§ 457.8, 457.109. As a result, each of the agreements or contracts that is the subject of the Commissioner’s examinations is an “agreement” or “contract” authorized by FCIC regulations within the meaning of § 400.352(a).
I also believe that the Commissioner’s orders and examinations “directly or indirectly affect or govern” these agreements or contracts. There is no allegation by the Commissioner that Alliance has failed to comply with policies or procedures of the FCIC. The Commissioner’s pleadings make clear that the purpose of the examinations is to determine whether Alliance has violated independent provisions of Minnesota law relating to the handling of insurance claims. In particular, the Commissioner believes that Alliance may have “fail[ed] to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies,” Minn.Stat. § 72A.20 subd. 12(2), “refus[ed] to pay claims without conducting a reasonable investigation,” Minn.Stat. § 72A.20 subd. 12(4), and “fail[ed] to complete its investigation and inform the insured ... of acceptance or denial of a claim within 30 business days after receipt of notification of [such] claim .... ” Minn. Stat. § 72A.201, subd. 4(3). The Commissioner also seeks to inquire whether Alliance has “fail[ed] to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies,” Minn.Stat. § 72A.20 subd. 12(3), or “fail[ed] to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.” Minn. Stat. § 72A.20 subd. 12(14).
The federally-mandated terms of federally-reinsured crop insurance policies, however, already impose a set of requirements for handling claims. Each policy specifies the “duties” of an insurer in the event of damage or loss. Under the policy terms prescribed by the FCIC, for example, an insurer must pay an insured’s loss within 30 days after (1) the insurer and the insured reach an agreement regarding the claim, (2) arbitration and any appeals are completed, or (3) a final judgment regarding the claim is entered. 7 C.F.R. § 457.8 ¶ 14 (“Our Duties”). The policy terms also provide that the insurer must give notice if a claim cannot be paid within 30 days, and they permit insurers to defer loss adjustments “until the amount of loss can be accurately determined.” Id. The federal regulations prohibit an insurer from paying on a claim unless the insured has complied with all of the federally-mandated terms of the contract that impose duties on the insured. Id. §§ 457.7, 457.8 ¶ 14 (“Your Duties”).
When the FCIC promulgated § 400.352(a), one of the reasons cited for adoption of such a broad regulation was the frequent occurrence of state agencies requiring changes in federally-approved insurance policies with the result that policyholders living in different States were treated differently. Gen. Admin. Regs., 55 Fed.Reg. at 23,066. The claims-handling duties imposed by the FCIC do not include the requirements set forth in Minnesota law. By imposing new claims-handling duties that the FCIC has not seen fit to include in the federally-mandated policy terms, therefore, the Commis *557 sioner would affect or govern agreements or contracts authorized by the FCIC.
The Commissioner also argues that because the examinations are simply an inquiry, the examinations themselves cannot affect “agreements, contracts, or actions authorized” by the FCIC. Under this view, even if the Commissioner is precluded from taking any regulatory action at the end of the examination (because regulation of Alliance’s claims-handling would affect agreements, contracts, or actions authorized by the FCIC), the Commissioner may nonetheless subject Alliance to the examination. This is an unlikely interpretation of the FCIC’s intent, and I believe the examinations are better understood as an effort to “indirectly affect or govern ” the crop insurance policies that underlie this dispute. If, moreover, the market conduct examinations do not technically “affect or govern,” because they only gather information (while presumably imposing attendant burdens on the insurer), then they present an example of state regulatory action that is implicitly preempted, because it stands as an “obstacle” to the accomplishment and execution of the federal objective of uniform national crop insurance. See Geier v. Am. Honda Motor Co., 529 U.S. 861, 881, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000). Where the only purpose of the market conduct examinations is to establish a basis for potential state regulation that is expressly preempted by § 400.352(a), I think it is implicit in the FCIC’s statement of express preemption that such preliminary regulatory activity is also preempted.
For the foregoing reasons, I would reverse the judgment of the district court.

. Not insignificantly, the FCIC has published an amendment to the proviso of § 400.352(b)(4), effective August 30, 2004, that deletes the reference to "any action on the part of any authorized State regulatory body.” The new proviso provides only that:
Nothing herein precludes such damages being imposed against the company if a determination is obtained from FCIC that the company, its employee, agent or loss adjuster failed to comply with the terms of the policy or procedures issued by FCIC and such failure resulted in the insured receiv-
ing a payment in an amount that is less than the amount to which the insured was entitled.
General Administrative Regulations, 69 Fed. Reg. 48,652, 48,730 (Aug. 10, 2004) (to be codified at 7 C.F.R. § 400.352(b)(4)). The FCIC commented that it was clarifying the proviso so that "damages, fees and costs are preempted unless FCIC determines the insurance provider, agent, or loss adjusters failed to follow FCIC approved policy or procedure.” Id. at 48,726.